1  David A. Bricklin, WSBA No. 7583
2  Zachary K. Griefen, WSBA No. 48608
   Bricklin & Newman, LLP
3  123 NW 36th Street, Suite 205
4  Seattle, WA 98107
   (206) 264-8600
5  bricklin@bnd-law.com
6  griefen@bnd-law.com

7  Patrick Lanciotti, Esq. *(PHV Forthcoming)*
8  360 Lexington Avenue, 11th Fl.
   New York, New York 10017
9  (212) 397-1000
10 planciotti@napolilaw.com

11 Attorneys for Plaintiffs

12

13              IN THE UNITED STATES DISTRICT COURT
14              FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 15  NICOLE ACOSTA, individually and as<br>16  parent and natural guardian of M.A., minor<br>    child; GABRIEL ACOSTA; GABRIEL<br>17  ACOSTA, Jr.; MARILENA ACOSTA;<br>18  CLAUDIO ACOSTA; ALICYA<br>    ALTAMIRANO, individually and as<br>19  parent and natural guardian of S.G. and<br>20  J.G., minor children; ANTHONY<br>    ALTAMIRANO; KYLE AMES,<br>21  individually and as parent and natural<br>22  guardian of M.A., O.A., and P.A.; TORIN<br>    ANTIJUNTI; VICTORIA ANTIJUNTI;<br>23  RONALD BOSTER; PAMELA BOSTER;<br>24  DEBBY BROWN; DOUG SIMPSON;<br>    RICHARD HAYES; MARY HAYES;<br>25  BRAD HYATT; BRANDI HYATT;<br>26  JENNIFER MCINNIS; DARIK<br>    ROCHON; TASHA MCLEMORE; WILL | NO.<br><br>**CLASS ACTION<br>COMPLAINT WITH<br>INDIVIDUAL CLAIMS AND<br>DEMAND FOR JURY TRIAL<br>CLASS ACTION<br>CERTIFICATION PENDING** |

**CLASS ACTION COMPLAINT** - 1

MCLEMORE; MARK MEYOCKS; RENEE MEYOCKS; CODY MEYOCKS; MADISON MEYOCKS, LANCE OSTROM; CHARLENE OSTROM; JAMIE PARKER; LANDON PARKER; GERALD RAFN; JILL RAFN; JESSICA RICHARDS, individually and as parent and next friend of G.B. and K.F., minor children; SONIA SERRANO, individually and as parent and next friend of E.V., minor child; JOSE VARGAS; JUAN VARGAS; TROY SLOBIG; CORY SLOBIG; ROBERT SMOOT; CARRIE VALENCIA; AUDOMARO VALENCIA; EVELYN VANDENHEUVEL; RICHARD VANDENHEUVEL; MATTHEW VOGEL; JENNA VOGEL; JUSTIN WERST, individually and on behalf of all others similarly situated,

*Plaintiffs,*

*-vs -*

THE 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Co., AGC, INC., f/k/a Asahi Glass Co., AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA U.S. INC., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC. CHEMICALS, INC., CLARIANT CORPORATION, individually and as successor in interest to Sandoz Chemical Corporation, CORTEVA, INC., individually and as successor in interest to

**CLASS ACTION COMPLAINT** - 2

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

DuPont Chemical Solutions Enterprise,
DEEPWATER CHEMICALS, INC.,
DUPONT DE NEMOURS INC.,
individually and as successor in interest to
DuPont Chemical Solutions Enterprise,
DYNAX CORPORATION, E. I. DUPONT
DE NEMOURS AND COMPANY,
individually and as successor in interest to
DuPont Chemical Solutions Enterprise,
KIDDE-FENWAL, INC., individually and
as successor in interest to Kidde Fire
Fighting, Inc., NATION FORD
CHEMICAL COMPANY, THE
CHEMOURS COMPANY, individually
and as successor in interest to DuPont
Chemical Solutions Enterprise, THE
CHEMOURS COMPANY FC, LLC,
individually and as successor in interest to
DuPont Chemical Solutions Enterprise, and
TYCO FIRE PRODUCTS, LP,
individually and as successor in interest to
The Ansul Company,

*Defendants.*

## I.    CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs NICOLE ACOSTA, individually and as parent and natural guardian

of M.A., minor child; GABRIEL ACOSTA; GABRIEL ACOSTA, Jr.; MARILENA

ACOSTA; CLAUDIO ACOSTA; ALICYA ALTAMIRANO, individually and as

parent and natural guardian of S.G. and J.G., minor children; ANTHONY

ALTAMIRANO; KYLE AMES, individually and as parent and natural guardian of

M.A., O.A., and P.A.; TORIN ANTIJUNTI; VICTORIA ANTIJUNTI; RONALD

**CLASS ACTION COMPLAINT** - 3

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

BOSTER; PAMELA BOSTER; DEBBY BROWN; DOUG SIMPSON; RICHARD HAYES; MARY HAYES; BRAD HYATT; BRANDI HYATT; JENNIFER MCINNIS; DARIK ROCHON; TASHA MCLEMORE; WILL MCLEMORE; MARK MEYOCKS; RENEE MEYOCKS; CODY MEYOCKS; MADISON MEYOCKS, LANCE OSTROM; CHARLENE OSTROM; JAMIE PARKER; LANDON PARKER; GERALD RAFN; JILL RAFN; JESSICA RICHARDS, individually and as parent and next friend of G.B. and K.F., minor children; SONIA SERRANO, individually and as parent and next friend of E.V., minor child; JOSE VARGAS; JUAN VARGAS; TROY SLOBIG; CORY SLOBIG; ROBERT SMOOT; CARRIE VALENCIA; AUDOMARO VALENCIA; EVELYN VANDENHEUVEL; RICHARD VANDENHEUVEL; MATTHEW VOGEL; JENNA VOGEL; JUSTIN WERST, ("Plaintiffs"), by and through their undersigned counsel, hereby file this Class Action Complaint, individually, and on behalf of all others similarly situated, against Defendants, 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Co., AGC, INC., f/k/a Asahi Glass Co., AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA U.S INC., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC., CHEMICALS, INC., CLARIANT CORPORATION, CORTEVA, INC., DEEPWATER CHEMICALS, INC., DUPONT DE NEMOURS INC., DYNAX CORPORATION, E. I. DUPONT

**CLASS ACTION COMPLAINT** - 4

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

DE NEMOURS AND COMPANY, KIDDE-FENWAL, INC., NATION FORD CHEMICAL COMPANY, THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, and TYCO FIRE PRODUCTS, LP, ("Defendants") and allege, upon information and belief, as follows:

## II.    INTRODUCTION

1.      This action arises from the foreseeable contamination of groundwater by the use of aqueous film-forming foam ("AFFF") products that contained per- and poly-fluoroalkyl substances ("PFAS"), including perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA").

2.      PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS, PFOA, and/or their chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires. Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3.      PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain. PFOS and PFOA are also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

**CLASS ACTION COMPLAINT** - 5

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

4.      At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluorinated chemicals ("PFCs") contained in AFFF (collectively, "AFFF/Component Products").

5.      Defendants designed, manufactured, marketed, distributed, and/or sold AFFF/Component Products with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities, even when used as directed and intended by Defendants.

6.      Since its creation in the 1960s, AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants, and/or that contained fluorosurfactants and/or PFCs designed, manufactured, marketed, distributed, and/or sold by Defendants, used as directed and intended by Defendants, and subsequently released into the environment during fire protection, training, and response activities, resulting in widespread PFAS contamination.

7.      Since its creation in the 1960s, AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants, and/or that contained fluorosurfactants and/or PFCs designed, manufactured, marketed, distributed, and/or sold by Defendants, was sold to the U.S. Army for its use at the Yakima Training Center ("YTC"), Washington,

**CLASS ACTION COMPLAINT** - 6

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

which used it and subsequently released it into the environment during fire protection, training, and response activities, resulting in widespread PFAS contamination.

8.     AFFF containing PFAS were discharged, disposed of, or released from the YTC and onto lands and/or water in the vicinity of Plaintiffs' and the putative class.

9.     Beginning in 2020, the Army began testing drinking water wells on and around the YTC for PFAS. On-base use of firefighting foams that contain PFAS has contaminated groundwater, including off-base private drinking water wells west of the YTC.

10.    As a direct and proximate result of Defendant's acts and omissions, Plaintiffs have suffered injury and damages from the presence of PFAS in their water wells.

11.    The Putative Class represents all those residents of Yakima County, Washington, who were exposed to drinking water contaminated with PFAS.

### III.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1) and (d)(2) in that this action seeks monetary relief in excess of $5,000,000.00, exclusive of interest, costs and attorney's fees and is between citizens of different States.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions by Defendants giving rise to the claims asserted herein occurred in

**CLASS ACTION COMPLAINT** - 7

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

the Eastern District of Washington and caused harm to Plaintiffs and the Class

Members, the vast majority of whom reside in this District.

## IV.    PARTIES

### A.    Plaintiffs and Class Representatives

14.    Plaintiff Nicole Acosta is a resident of Yakima, Washington, who

currently resides at 318 Schlagel Road. Plaintiff owns the property, which currently

receives water from a private well. PFCs, including but not limited to PFOA and PFOS,

have entered the water, property, and soil, including but not limited to through the

accumulation in the pipes, faucets, showerheads, and appliances, as well as through

watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through

Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her

exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with

Thyroid Disease. Plaintiff is also at an increased risk of developing several health

conditions, including but not limited to effects on the liver and immune system, high

cholesterol levels, changes in thyroid hormone, and kidney cancer.

15.    Plaintiff M.A. is the minor child of Plaintiff Nicole Acosta. Plaintiff is a

resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff

resides at the property, which currently receives water from a private well. PFCs,

including but not limited to PFOA and PFOS, have entered the water, property, and

soil, including but not limited to through the accumulation in the pipes, faucets,

**CLASS ACTION COMPLAINT** - 8

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her exposure to PFCs in the contaminated water supply, Plaintiff is at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

16.    Plaintiff Gabriel Acosta is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. As a result of his exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with high cholesterol. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

17.    Plaintiff Gabriel Acosta, Jr. is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS,

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. As a result of his exposure to PFCs in the contaminated water supply, Plaintiff is at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

18.     Plaintiff Marilena Acosta is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with thyroid disease. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

**CLASS ACTION COMPLAINT** - 10

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

19.     Plaintiff Claudio Acosta is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. As a result of his exposure to PFCs in the contaminated water supply, Plaintiff is at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

20.     Plaintiff Alicya Altamirano is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her exposure to PFCs in the contaminated water supply, Plaintiff is at an increased risk of developing several health conditions, including but not limited to effects on the liver

**CLASS ACTION COMPLAINT** - 11

and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

21.     Plaintiff S.G. is the minor child of Plaintiff Alicya Altamirano. Plaintiff is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

22.     Plaintiff J.G. is the minor child of Plaintiff Alicya Altamirano. Plaintiff is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

23.    Plaintiff Anthony Altamirano is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. As a result of his exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with liver problems. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

24.    Plaintiff Kyle Ames is a former resident of Yakima, Washington, who currently resides in Grand Junction, CO. Plaintiff formerly resided at 330 Perry Way, Yakima, WA, and owned the property, which received water from a private well. PFCs, including but not limited to PFOA and PFOS, entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation

**CLASS ACTION COMPLAINT** - 13

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

25.    Plaintiff Megan Ames is a former resident of Yakima, Washington, who currently resides in Grand Junction, CO. Plaintiff formerly resided at 330 Perry Way, Yakima, WA, and owned the property, which received water from a private well. PFCs, including but not limited to PFOA and PFOS, entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with thyroid disease. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

26.    Plaintiff M.A. is the minor child of Plaintiff Kyle Ames. Plaintiff is a former resident of Yakima, Washington, who currently resides in Grand Junction, CO. Plaintiff formerly resided at 330 Perry Way, Yakima, WA, and owned the property, which received water from a private well. PFCs, including but not limited to PFOA and PFOS, entered the water, property, and soil, including but not limited to through the

**CLASS ACTION COMPLAINT** - 14

accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

27.     Plaintiff O.A. is the minor child of Plaintiff Kyle Ames. Plaintiff is a former resident of Yakima, Washington, who currently resides in Grand Junction, CO. Plaintiff formerly resided at 330 Perry Way, Yakima, WA, and owned the property, which received water from a private well. PFCs, including but not limited to PFOA and PFOS, entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

28.     Plaintiff P.A. is the minor child of Plaintiff Kyle Ames. Plaintiff is a former resident of Yakima, Washington, who currently resides in Grand Junction, CO. Plaintiff formerly resided at 330 Perry Way, Yakima, WA, and owned the property,

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

which received water from a private well. PFCs, including but not limited to PFOA and PFOS, entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

29.    Plaintiff Torin Antijunti is a resident of Yakima, Washington, who currently resides at 130 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

30.    Plaintiff Victoria Antijunti is a resident of Yakima, Washington, who currently resides at 130 Perry Way. Plaintiff resides at the property, which currently

**CLASS ACTION COMPLAINT** - 16

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of his exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with brain lesions and thyroid disease. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

31.    Plaintiff Ronald Boster is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. As a result of his exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with diabetes and kidney damage. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system,

**CLASS ACTION COMPLAINT** - 17

high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

32.    Plaintiff Pamela Boster is a resident of Yakima, Washington, who currently resides at 318 Schlagel Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with kidney disease and thyroid disease. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

33.    Plaintiff Debby Brown is a resident of Yakima, Washington, who currently resides at 136 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an

**CLASS ACTION COMPLAINT** - 18

increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

34.    Plaintiff Doug Simpson is a resident of Yakima, Washington, who currently resides at 136 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

35.    Plaintiff Richard Hayes is a resident of Yakima, Washington, who currently resides at 230 Leininger Drive. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is at an

**CLASS ACTION COMPLAINT** - 19

increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

36.     Plaintiff Mary Hayes is a resident of Yakima, Washington, who currently resides at 230 Leininger Drive. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with thyroid disease. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

37.     Plaintiff Brad Hyatt is a resident of Yakima, Washington, who currently resides at 331 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has

**CLASS ACTION COMPLAINT** - 20

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

38.    Plaintiff Brandi Hyatt is a resident of Yakima, Washington, who currently resides at 331 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with thyroid disease. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

39.    Plaintiff Jennifer McInnis is a resident of Yakima, Washington, who currently resides at 140 Paint Horse Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as

**CLASS ACTION COMPLAINT** - 21

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with diabetes and high cholesterol. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

40.    Plaintiff Darik Rochon is a resident of Yakima, Washington, who currently resides at 140 Paint Horse Road. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

41.    Plaintiff Tasha Mclemore is a resident of Yakima, Washington, who currently resides at 181 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

42.     Plaintiff Will Mclemore is a resident of Yakima, Washington, who currently resides at 181 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

43.     Plaintiff Mark Meyocks is a resident of Yakima, Washington, who currently resides at 140 Leininger Drive. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to

**CLASS ACTION COMPLAINT** - 23

through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

44.    Plaintiff Renee Meyocks is a resident of Yakima, Washington, who currently resides at 140 Leininger Drive. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

45.    Plaintiff Cody Meyocks is a resident of Yakima, Washington, who currently resides at 140 Leininger Drive. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to

**CLASS ACTION COMPLAINT** - 24

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

46.    Plaintiff Madison Meyocks is a resident of Yakima, Washington, who currently resides at 140 Leininger Drive. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

47.    Plaintiff Lance Ostrom is a resident of Yakima, Washington, who currently resides at 191 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the

**CLASS ACTION COMPLAINT** - 25

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. As a result of his exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with prostate cancer. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

48.    Plaintiff Charlene Ostrom is a resident of Yakima, Washington, who currently resides at 191 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. As a result of her exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with high cholesterol and thyroid disease. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

49.    Plaintiff Jamie Parker is a resident of Yakima, Washington, who currently resides at 290 Perry Way. Plaintiff owns the property, which currently receives water

**CLASS ACTION COMPLAINT** - 26

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

50.    Plaintiff Landon Parker is a resident of Yakima, Washington, who currently resides at 290 Perry Way. Plaintiff obtains water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

51.    Plaintiff Gerald T. Rafn is a resident of Yakima, Washington, who currently resides at 1922 E Selah Road. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS,

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

52.    Plaintiff Jill Rafn is a resident of Yakima, Washington, who currently resides at 1922 E Selah Road. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

53.    Plaintiff Jessica Richards is a resident of Yakima, Washington, who currently resides at 13916 McAueley Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

54.    Plaintiff G.B. is the minor child of Plaintiff Jessica Richards. Plaintiff a resident of Yakima, Washington, who currently resides at 13916 McAueley Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

55.    Plaintiff K.F. is the minor child of Plaintiff Jessica Richards. Plaintiff a resident of Yakima, Washington, who currently resides at 13916 McAueley Road. Plaintiff resides at the property, which currently receives water from a private well.

CLASS ACTION COMPLAINT - 29

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

56.    Plaintiff Sonia Serrano is a resident of Yakima, Washington, who currently resides at 260 Perry Way. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

57.    Plaintiff E.V. is a resident of Yakima, Washington, who currently resides at 260 Perry Way. Plaintiff is the minor child of Plaintiff Sonia Serrano. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but

**CLASS ACTION COMPLAINT** - 30

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

58.    Plaintiff Jose Vargas is a resident of Yakima, Washington, who currently resides at 260 Perry Way. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

59.    Plaintiff Juan Vargas is a resident of Yakima, Washington, who currently resides at 260 Perry Way. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have

**CLASS ACTION COMPLAINT** - 31

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

60.     Plaintiff Troy Slobig is a resident of Yakima, Washington, who currently resides at 230 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

61.     Plaintiff Cory Slobig is a resident of Yakima, Washington, who currently resides at 230 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. As a result of his exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with thyroid disease. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

62.    Plaintiff Robert Smoot is a resident of Yakima, Washington, who currently resides at 440 Firing Center Road. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. As a result of his exposure to PFCs in the contaminated water supply, Plaintiff has been diagnosed with colon cancer. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

**CLASS ACTION COMPLAINT** - 33

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

63.    Plaintiff Carrie Valencia is a resident of Yakima, Washington, who currently resides at 382 Pomona Heights Road. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

64.    Plaintiff Audomaro Valencia is a resident of Yakima, Washington, who currently resides at 382 Pomona Heights Rd. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

**CLASS ACTION COMPLAINT** - 34

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

65.    Plaintiff Evelyn Vandenheuvel is a resident of Yakima, Washington, who currently resides at 5504 W Whitman Street. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

66.    Plaintiff Richard Vandenheuvel is a resident of Yakima, Washington, who currently resides at 5504 W Whitman St. Plaintiff resides at the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

**CLASS ACTION COMPLAINT** - 35

67.    Plaintiff Matthew Vogel is a resident of Yakima, Washington, who currently resides at 241 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, testicular cancer, and kidney cancer.

68.    Plaintiff Jenna Vogel is a resident of Yakima, Washington, who currently resides at 241 Perry Way. Plaintiff owns the property, which currently receives water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in her blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

**CLASS ACTION COMPLAINT** - 36

69.    Plaintiff Justin Werst is a resident of Yakima, Washington, who currently resides at 290 Perry Way. Plaintiff obtains water from a private well. PFCs, including but not limited to PFOA and PFOS, have entered the water, property, and soil, including but not limited to through the accumulation in the pipes, faucets, showerheads, and appliances, as well as through watering the lawn. Plaintiff has been exposed to elevated levels of PFCs through Plaintiff's water and has a bioaccumulation of PFCs in his blood. Plaintiff is also at an increased risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

## B.    Defendants

70.    The term "Defendants" refers to all Defendants named herein jointly and severally.

### i.    The AFFF Defendants

71.    The term "AFFF Defendants" refers collectively to Defendants 3M Company, Angus International Safety Group, Ltd., Amerex Corporation, Buckeye Fire Equipment Company, Carrier Global Corporation, Central Sprinkler, LLC, Chemguard Inc., Fire Products GP Holding, LLC, Johnson Controls International PLC, Kidde-Fenwal, Inc., National Foam, Inc.., and Tyco Fire Products L.P.,

72.    **Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Co. ("3M")** is a corporation organized and existing under the laws of

**CLASS ACTION COMPLAINT** - 37

the State of Delaware, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144-1000.

73.    Beginning before 1970 and until at least 2002, 3M designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

74.    **Defendant Amerex Corporation ("Amerex")** is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business located at 7595 Gadsden Highway, Trussville, AL 35173.

75.    Amerex is a manufacturer of firefighting products. Beginning in 1971, it was a manufacturer of hand portable and wheeled extinguishers for commercial and industrial applications.

76.    In 2011, Amerex acquired Solberg Scandinavian AS, one of the largest manufacturers of AFFF products in Europe.

77.    On information and belief, beginning in 2011, Amerex designed, manufactured, marketed distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

78.    **Defendant Tyco Fire Products LP ("Tyco")** is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143-2542.

**CLASS ACTION COMPLAINT** - 38

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

79.    Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990.

80.    Beginning in or around 1975, Ansul designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

81.    After Tyco acquired Ansul in 1990, Tyco/Ansul continued to design, manufacture, market, distribute, and sell AFFF products containing PFAS, including but not limited to PFOA and PFOS.

82.    **Defendant Chemguard, Inc. ("Chemguard")** is a corporation organized under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143.

83.    On information and belief, Chemguard designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA and PFOS.

84.    On information and belief, Chemguard was acquired by Tyco International Ltd. in 2011.

85.    **Defendant Buckeye Fire Equipment Company ("Buckeye")** is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086.

**CLASS ACTION COMPLAINT** - 39

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

86.    On information and belief, Buckeye designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA and PFOS.

87.    **Defendant National Foam, Inc. ("National Foam")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501.

88.    Beginning in or around 1973, National Foam designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

89.    On information and belief, National Foam currently manufactures the Angus brand of AFFF products and is a subsidiary of Angus International Safety Group.

90.    On information and belief, National Foam merged with Chubb Fire Ltd. to form Chubb National Foam, Inc. in or around 1988.

91.    On information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. (collectively referred to as "Chubb").

92.    On information and belief, Chubb was acquired by Williams Holdings in 1997.

**CLASS ACTION COMPLAINT** - 40

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

93.    On information and belief, Angus Fire Armour Corporation had previously been acquired by Williams Holdings in 1994.

94.    On information and belief, Williams Holdings was demerged into Chubb and Kidde P.L.C. in or around 2000.

95.    On information and belief, when Williams Holdings was demerged, Kidde P.L.C. became the successor in interest to National Foam System, Inc. and Angus Fire Armour Corporation.

96.    On information and belief, Kidde P.L.C. was acquired by United Technologies Corporation in or around 2005.

97.    On information and belief, Angus Fire Armour Corporation and National Foam separated from United Technologies Corporation in or around 2013.

98.    **Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal")** is a corporation organized under the laws of the State of Delaware, with its principal place of business at One Financial Plaza, Hartford, Connecticut 06101.

99.    On information and belief, Kidde-Fenwal was an operating subsidiary of Kidde P.L.C. and manufactured AFFF following Kidde P.L.C.'s acquisition by United Technologies Corporation.

100.    On information and belief, Kidde-Fenwal is the entity that divested the AFFF business unit now operated by National Foam in 2013.

**CLASS ACTION COMPLAINT** - 41

101.   **Defendant Carrier Global Corporation ("Carrier")** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

102.   On information and belief, Carrier was formed in March 2020 when United Technologies Corporation spun off its fire and security business before it merged with Raytheon Company in April 2020.

103.   On information and belief, Kidde-Fenwal became a subsidiary of Carrier when United Technologies Corporation spun off its fire and security business in March 2020.

104.   On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and sold AFFF products containing PFOS, PFOA, and/or their chemical precursors that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at YTC.

ii.     **The Fluorosurfactant Defendants**

105.   The term **"Fluorosurfactant Defendants"** refers collectively to Defendants 3M, , Arkema Inc., ChemDesign Products Incorporated, Chemguard Inc., Deepwater Chemicals, Inc., E.I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours Inc., and Dynax Corporation.

**CLASS ACTION COMPLAINT** - 42

106.   **Defendant Arkema Inc.** is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business at 900 First Avenue, King of Prussia, PA 19406.

107.   Arkema Inc. develops specialty chemicals and polymers.

108.   Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

109.   On information and belief, Arkema Inc. designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

110.   **Defendant ChemDesign Products Inc. ("ChemDesign")** is a corporation organized under the laws of Delaware, with its principal place of business located at 2 Stanton Street, Marinette, WI, 54143.

111.   On information and belief, ChemDesign designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products

112.   **Defendant Deepwater Chemicals, Inc. ("Deepwater")** is a corporation organized under the laws of Delaware, with its principal place of business located at 196122 E County Road 40, Woodward, OK, 73801.

113.   On information and belief, Deepwater Chemicals designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products

**CLASS ACTION COMPLAINT** - 43

114.   **Defendant Dynax Corporation ("Dynax")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523.

115.   On information and belief, Dynax entered into the AFFF market on or about 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical stabilizers containing PFOS, PFOA, and/or their chemical precursors.

116.   On information and belief, Dynax designed, manufactured, marketed, distributed, and sold fluorosurfactants and fluorochemical stabilizers containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

117.   **Defendant E.I. du Pont de Nemours & Company ("DuPont")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

118.   **Defendant The Chemours Company ("Chemours Co.")** is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, P.O. Box 2047, Wilmington, Delaware, 19899.

119.   In 2015, DuPont spun off its performance chemicals business to Chemours Co., along with vast environmental liabilities which Chemours Co. assumed, including those related to PFOS and PFOA and fluorosurfactants. On information and

**CLASS ACTION COMPLAINT** - 44

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

belief, Chemours Co. has supplied fluorosurfactants containing PFOS and PFOA, and/or their chemical precursors to manufacturers of AFFF products.

120. On information and belief, Chemours Co. was incorporated as a subsidiary of DuPont as of April 30, 2015. From that time until July 2015, Chemours Co. was a wholly-owned subsidiary of DuPont.

121. In July 2015, DuPont spun off Chemours Co. and transferred to Chemours Co. its "performance chemicals" business line, which includes its fluoroproducts business, distributing shares of Chemours Co. stock to DuPont stockholders, and Chemours Co. has since been an independent, publicly-traded company.

122. **Defendant The Chemours Company FC, LLC ("Chemours FC")** is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware, 19899.

123. **Defendant Corteva, Inc. ("Corteva")** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Rd., Wilmington, Delaware 19805.

124. **Defendant Dupont de Nemours Inc**. f/k/a DowDuPont, Inc. (**"Dupont de Nemours Inc."**) is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674.

**CLASS ACTION COMPLAINT** - 45

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

125.   On June 1, 2019, DowDuPont separated its agriculture business through the spin-off of Corteva.

126.   Corteva was initially formed in February 2018. From that time until June 1, 2019, Corteva was a wholly-owned subsidiary of DowDuPont.

127.   On June 1, 2019, DowDuPont distributed to DowDuPont stockholders all issued and outstanding shares of Corteva common stock by way of a pro-rata dividend. Following that distribution, Corteva became the direct parent of E. I. Du Pont de Nemours & Co.

128.   Corteva holds certain DowDuPont assets and liabilities, including DowDuPont's agriculture and nutritional businesses.

129.   On June 1, 2019, DowDuPont, the surviving entity after the spin-off of Corteva and of another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be known as DuPont ("New DuPont"). New DuPont retained assets in the specialty products business lines following the above-described spin-offs, as well as the balance of the financial assets and liabilities of E.I DuPont not assumed by Corteva.

130.   Defendants E. I. Du Pont de Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. are collectively referred to as "DuPont" throughout this Complaint.

**CLASS ACTION COMPLAINT** - 46

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

131.  On information and belief, DuPont designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

132.  On information and belief, 3M and Chemguard also designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

133.  On information and belief, the Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at YTC.

**iii.    The PFC Defendants**

134.  The term **"PFC Defendants"** refers collectively to 3M, AGC, Inc., AGC Chemicals Americas Inc., Archroma U.S. Inc., ChemDesign Products Inc., Chemicals, Inc., Clariant Corporation, Deepwater Chemicals, Inc., E. I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., DuPont de Nemours Inc., and Nation Ford Chemical Company.

135.  **Defendant AGC, Inc. ("AGC")**, f/k/a Asahi Glass Co., is a corporation organized under the laws of Japan that does business throughout the United State and

**CLASS ACTION COMPLAINT** - 47

has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

136.    On information and belief, AGC was founded more than a hundred years ago and was the first Japanese producer of sheet glass.

137.    On information and belief, AGC expanded its operations in the 1960s by developing a fluorochemical business segment that sold products such as the water and oil repellent agents AsahiGuard and fluoropolymer film F-CLEAN.

138.    On information and belief, AGC designed, manufactured, marketed, distributed, and sold fluorochemicals containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

139.    **Defendant AGC Chemicals Americas, Inc. ("AGCCA")** is a corporation organized and existing under the laws of Delaware, having its principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, PA 19341.

140.    On information and belief, AGCCA was formed in 2004 and is a subsidiary of AGC, Inc.

141.    AGCCA manufactures specialty chemicals. It offers glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates.

**CLASS ACTION COMPLAINT** - 48

142.    On information and belief, AGCCA designed, manufactured, marketed, distributed, and sold PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

143.    **Defendant Archroma U.S., Inc. ("Archroma")** is a corporation organized and existing under the laws of Delaware, with its a principal place of business at 5435 77 Center Drive, Charlotte, North Carolina 28217.

144.    On information and belief, Archroma was formed in 2013 when Clariant Corporation divested its textile chemicals, paper specialties, and emulsions business to SK Capital Partners.

145.    On information and belief, Archroma designed, manufactured, marketed, distributed, and sold PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

146.    **Defendant Chemicals, Inc. ("Chemicals, Inc.")** is a corporation organized and existing under the laws of Texas, with its principal place of business located at 12321 Hatcherville, Baytown, TX 77520.

147.    On information and belief, Chemicals, Inc. supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

**CLASS ACTION COMPLAINT** - 49

148. **Defendant Clariant Corporation ("Clariant")** is a corporation organized and existing under the laws of New York, with its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

149. On information and belief, Clariant is the successor in interest to the specialty chemicals business of Sandoz Chemical Corporation ("Sandoz"). On information and belief, Sandoz spun off its specialty chemicals business to form Clariant in 1995.

150. On information and belief, Clariant supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

151. **Defendant Nation Ford Chemical Co. ("Nation Ford")** is a corporation organized and existing under the laws of South Carolina, with its principal place of business located at 2300 Banks Street, Fort Mill, SC 29715.

152. On information and belief, Nation Ford supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

153. On information and belief, 3M, ChemDesign, Deepwater Chemicals, and DuPont also supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

**CLASS ACTION COMPLAINT** - 50

154.  On information and belief, the Fluorochemical Defendants supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at YTC.

155.  All Defendants, at all times material herein, acted by and through their respective agents, servants, officers and employees, actual or ostensible, who then and there were acting within the course and scope of their actual or apparent agency, authority or duties. Defendants are liable based on such activities, directly and vicariously.

156.  Defendants represent all or substantially all of the market for AFFF/Component Products at YTC.

## V.    FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

### A.    PFOA and PFOS and Their Risk to Public Health

157.  PFAS are chemical compounds containing fluorine and carbon. These substances have been used for decades in the manufacture of, among other things, household and commercial products that resist heat, stains, oil, and water. These substances are not naturally occurring and must be manufactured.

158.  The two most widely studied types of these substances are PFOA and PFOS.

**CLASS ACTION COMPLAINT** - 51

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

159.   PFOA and PFOS have unique properties that cause them to be: (i) mobile and persistent, meaning that they readily spread into the environment where they break down very slowly; (ii) bioaccumulative and biomagnifying, meaning that they tend to accumulate in organisms and up the food chain; and (iii) toxic, meaning that they pose serious health risks to humans and animals.

160.   PFOA and PFOS easily dissolve in water, and thus they are mobile and easily spread in the environment. PFOA and PFOS also readily contaminate soils and leach from the soil into groundwater, where they can travel significant distances.

161.   PFOA and PFOS are characterized by the presence of multiple carbon-fluorine bonds, which are exceptionally strong and stable. As a result, PFOA and PFOS are thermally, chemically, and biologically stable. They resist degradation due to light, water, and biological processes.

162.   Bioaccumulation occurs when an organism absorbs a substance at a rate faster than the rate at which the substance is lost by metabolism and excretion. Biomagnification occurs when the concentration of a substance in the tissues of organisms increases as the substance travels up the food chain.

163.   PFOA and PFOS bioaccumulate/biomagnify in numerous ways. First, they are relatively stable once ingested, so that they bioaccumulate in individual organisms for significant periods of time. Because of this stability, any newly ingested

**CLASS ACTION COMPLAINT** - 52

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

PFOA and PFOS will be added to any PFOA and PFOS already present. In humans, PFOA and PFOS remain in the body for years.

164.    PFOA and PFOS biomagnify up the food chain. This occurs, for example, when humans eat fish that have ingested PFOA and/or PFOS.

165.    The chemical structure of PFOA and PFOS makes them resistant to breakdown or environmental degradation. As a result, they are persistent when released into the environment.

166.    Exposure to PFAS is toxic and poses serious health risks to humans and animals.

167.    PFAS are readily absorbed after consumption or inhalation and accumulate primarily in the bloodstream, kidney, and liver.

**B.    Defendants' Manufacture and Sale of AFFF/Component Products**

168.    AFFF is a type of water-based foam that was first developed in the 1960s to extinguish hydrocarbon fuel-based fires.

169.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

170.    AFFF is synthetically formed by combining fluorine-free hydrocarbon foaming agents with fluorosurfactants. When mixed with water, the resulting solution produces an aqueous film that spreads across the surface of hydrocarbon fuel. This film

**CLASS ACTION COMPLAINT** - 53

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

provides fire extinguishment and is the source of the designation aqueous film-forming foam.

171.    Beginning in the 1960s, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products that used fluorosurfactants containing either PFOS, PFOA, or the chemical precursors that degrade into PFOS and PFOA.

172.    AFFF can be made without the fluorosurfactants that contain PFOA, PFOS, and/or their precursor chemicals. Fluorine-free firefighting foams, for instance, do not release PFOA, PFOS, and/or their precursor chemicals into the environment.

173.    AFFF that contains fluorosurfactants, however, is better at extinguishing hydrocarbon fuel-based fires due to their surface-tension lowering properties, essentially smothering the fire and starving it of oxygen.

174.    The fluorosurfactants used in 3M's AFFF products were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

175.    The fluorosurfactants used in other AFFF products sold by the AFFF Defendants were manufactured by the Fluorosurfactant Defendants through the process of telomerization.

176.    The PFCs the Fluorosurfactant Defendants needed to manufacture those fluorosurfactants contained PFOS, PFOA, and/or their chemical precursors and were designed, manufactured, marketed, distributed and/or sold by the PFC Defendants.

**CLASS ACTION COMPLAINT** - 54

177.   On information and belief, the PFC and Fluorosurfactant Defendants were aware that the PFCs and fluorosurfactants they designed, manufactured, marketed, distributed, and/or sold would be used in the AFFF products designed, manufactured, marketed, distributed, and/or sold by the AFFF Defendants.

178.   On information and belief, the PFC and Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and/or sold the PFC and/or fluorosurfactants contained in the AFFF products discharged into the environment during fire protection, training, and response activities conducted at the YTC, resulting in widespread PFAS contamination.

179.   On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF products discharged into the environment during fire protection, training, and response activities conducted at the YTC, resulting in widespread PFAS contamination.

**C.    Defendants' Knowledge of the Threats to Public Health and the Environment Posed by PFOS and PFOA**

180.   On information and belief, by at least the 1970s 3M and DuPont knew or should have known that PFOA and PFOS are mobile and persistent, bioaccumulative and biomagnifying, and toxic.

**CLASS ACTION COMPLAINT** - 55

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

181.   On information and belief, 3M and DuPont concealed from the public and government agencies its knowledge of the threats to public health and the environment posed by PFOA and PFOS.

182.   Some or all of the Defendants understood how stable the fluorinated surfactants used in AFFF are when released into the environment from their first sale to a customer, yet they failed to warn their customers or provide reasonable instruction on how to manage wastes generated from their products.

i.     **1940s and 1950s: 3M, DuPont, and the Development of a Toxic Chemical Family**

183.   The development of this family of chemical compounds began with Defendant 3M in the 1940s. At that time, 3M's Central Research Laboratory was working with a scientist at Penn State University, Joseph H. Simons, who had developed and patented a process of preparing fluorine compounds through electrochemical fluorination ("ECF"). In 1945, 3M acquired Simons' ECF patents. It would be another three years before 3M's Central Research developed fluorinated compounds that could be used for commercial applications. During that time, 3M scientists continuously researched and created new fluorochemicals; in the words of

**CLASS ACTION COMPLAINT** - 56

one researcher, "[a]lmost every day we made a new molecule which had never been on the face of the earth before."[1]

184.   From the early days of its fluorochemical research, 3M recognized the very characteristics that make PFAS persistent pollutants in the environment today. For example, Simons' 1948 patent for the ECF process, which was assigned to 3M, stated that the compounds produced through ECF are non-corrosive, and of little chemical reactivity, and do not react with any of the metals at ordinary temperatures and react only with the more chemically reactive metals such as sodium, at elevated temperatures.[2] The patent also stated that the fluorochemicals produced by the ECF process do not react with other compounds or reagents due to the blanket of fluorine atoms surrounding the carbon skeleton of the molecule. 3M understood that the stability

_____

[1] Neil McKay, *A Chemical History of 3M: 1933-1990*.

https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1365.pdf

[2] Simons, J. H., Fluorination of Organic Compounds, U.S. Patent No. 2,447,717. August 24, 1948, *available at*

https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1005.pdf.

**CLASS ACTION COMPLAINT** - 57

of the carbon-to-fluorine bonds prevented its fluorosurfactants from undergoing further chemical reactions or degrading under natural processes in the environment.[3]

185.   3M was also aware of the thermal stability of is fluorinated compounds prior to commercial production. Simons' ECF patent application states that the compounds produced by the ECF process were thermally stable at temperatures up to 750° C (1382º F). Additional research by 3M expanded its understanding of the thermal stability of fluorinated compounds.[4]

186.   In 1949, 3M built the first manufacturing facility to expand ECF from laboratory research to commercial production, and it began to present its fluorochemical research in order to find potential uses and customers for the compounds it was manufacturing.

187.   3M soon found a customer: DuPont. In 1951, DuPont began purchasing a perfluorinated carboxylic acid (perfluorooctanoic acid or PFOA), for use in manufacturing a non-stick coating called Teflon.

---

[3] Simons, J. H., 1950. Fluorocarbons and Their Production. Fluorine Chemistry, 1(12): 401-422, available at https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX3008.pdf.

[4] Bryce, T. J., 1950. Fluorocarbons - Their Properties and Wartime Development. Fluorine Chemistry, 1(13): 423-462.

**CLASS ACTION COMPLAINT** - 58

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

188.   Even then, 3M's research had already documented that PFAS accumulate in the blood of mice exposed to the chemicals in laboratory tests.[5] Also, a 1956 study by researchers at Stanford University found that PFAS bind to proteins in human blood.[6]

189.   In 1964, a group of DuPont employees working in Teflon manufacturing became sick after their department was moved to a more enclosed workspace.[7] They experienced chills, fever, difficulty breathing, and a tightness in the chest—symptoms referred to variously as "polymer-fume fever," "Teflon flu," or simply, "the shakes." Polymer-fume fever was first reported in medical literature in 1951.

---

[5] 1950 3M test study results with Perfluorobutyric acid, *available at* https://static.ewg.org/reports/2019/pfa-timeline/1950_Mice.pdf?_ga=2.21758526.426747500.1673645134-2012946541.1673645134.

[6] Perfluorooctanoic Acid Interactions with Human Serum Albumin, *available at* https://static.ewg.org/reports/2019/pfa-timeline/1956_Stanford.pdf?_ga=2.59569645.1994765108.1678715813-813372143.1678715813.

[7] Charles E. Lewis and Gerald R. Kerby, *An Epidemic of Polymer-Fume Fever*, 191 JAMA 375 (February 1, 1965).

CLASS ACTION COMPLAINT - 59

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

### ii.    1960s: AFFF's Environmental Hazards Come Into Focus

190.    By at least the end of the 1960s, additional research and testing performed by 3M and DuPont indicated that fluorosurfactants, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

191.    One 3M employee wrote in 1964, "This chemical stability also extends itself to all types of biological processes; <u>there are no known biological organisms that are able to attack the carbon-fluorine bond in a fluorocarbon.</u>"[8] Thus, 3M knew by the mid-1960s that its fluorosurfactants were immune to chemical and biological degradation in soils and groundwater.

192.    3M also knew by 1964 that fluorocarbon carboxylic acids and fluorocarbon sulfonic acids, when dissolved, dissociated to form highly stable perfluorocarboxylate and perfluorosulfonate ions. Later studies by 3M on the adsorption and mobility of FC-95 (the potassium salt of PFOS) and FC-143 (the

---

[8] Bryce, H.G., Industrial and Utilitarian Aspects of Fluorine Chemistry (1964), *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX3022.pdf.

**CLASS ACTION COMPLAINT** - 60

ammonium salt of PFOA) in soils indicated very high solubility and very high mobility in soils for both compounds.[9]

193.    Also, in a 1965 study sponsored by DuPont where rats were fed a PFAS compound over a ninety-day period the rats had liver damage and an showed an increased size in the spleen.

194.    Despite early warnings of the toxic, persistent, and bioaccumulative nature of PFOS and PFOA, these chemicals began to be used in a product that would be released in large quantities directly into the environment whenever used: firefighting foam.

195.    AFFF was first developed in the 1960s as a result of the U.S. Navy's research into the use of fluorosurfactants in firefighting foam to extinguish fuel-based shipboard fires.

196.    In 1969, the Navy promulgated a military standard or "MilSpec" requiring contractors to use "fluorocarbon surfactants" in firefighting foam products. Since then, the Navy has revised this MilSpec multiple times, but at no time did the Navy specify the specific fluorosurfactants to be used in AFFF. The AFFF MilSpec was a

---

[9] Technical Report Summary re : Adsorption of FC 95 and FC143 on Soil, Feb. 27, 1978, *available at*

https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1158.pdf.

**CLASS ACTION COMPLAINT** - 61

"performance specification," meaning that the product manufacturers were given great flexibility with respect to designing a product that would meet the military's performance requirements.

197.   Firefighting foam can be made without the fluorosurfactants that contain PFOA, PFOS, and/or their precursor chemicals.

198.   When the Navy first promulgated the AFFF MilSpec, hundreds of different fluorosurfactants had already been created.

199.   Nonetheless, beginning in the 1960s, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products that used fluorosurfactants containing either PFOS, PFOA, or the chemical precursors that degrade into PFOS and PFOA.

200.   From the late 1960s to 2002, Defendant 3M manufactured and sold AFFF containing PFOS under the brand name "Light Water."

201.   Because 3M held the patents on the ECF process, other AFFF Defendants utilized PFAS produced through a different process, called fluorotelomerization. These fluorotelomer AFFF formulations were produced beginning in the 1970s. Although they are not made with PFOA, they contain precursors—polyfluorinated compounds that are known to degrade to compounds that include PFOA.

202.   On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF products discharged into the environment

**CLASS ACTION COMPLAINT** - 62

during fire protection, training, and response activities conducted at the YTC, resulting in widespread PFAS contamination.

203.   The AFFF Defendants treated their foam formulations as proprietary information and did not disclose the specific chemical ingredients of their formulations to government agencies or the public.

204.   Some or all of the Defendants understood how stable the fluorinated surfactants used in AFFF are when released into the environment from their first sale to a customer, yet they failed to warn their customers or provide reasonable instruction on how to manage wastes generated from their products.

### iii.   1970s -1980s: Defendants Deepening Knowledge of the Risks of PFOA and PFOS

205.   By at least the 1970s, as Defendants expanded the market for AFFF formulations containing PFOA and PFOS, 3M and DuPont knew or should have known that PFOA and PFOS are mobile and persistent, bioaccumulative and biomagnifying, and toxic.

206.   During the 1970s, 3M also learned that the fluorosurfactants used in AFFF accumulated in the human body and were "even more toxic" than previously believed.

**CLASS ACTION COMPLAINT** - 63

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

207.   An internal memo from 3M in 1971 states that "the thesis that there is 'no natural sink' for fluorocarbons obviously demands some attention."[10] But if 3M did give this issue the attention demanded at this time, it did not share it with the public.

208.   In 1975, two independent toxicologists, Dr. Warren Guy and Donald Taves, discovered that an unidentified fluorine compound had been found in human blood sampled from different blood banks. Dr. Guy contacted 3M to ask if it knew of "possible sources" of the chemicals.[11] 3M's scientists concluded internally that the fluorine compounds resembled PFOS manufactured by 3M, but 3M did not share this conclusion with the independent toxicologists or anyone else outside of 3M.

209.   3M did, however, test the blood of its own workers in 1976, finding "up to 1000 times 'normal' amounts of organically bound fluorine in their blood."[12]

_____

[10] Memorandum from H.G. Bryce to R.M. Adams re : Ecological Aspects of Fluorocarbons, Sept. 13, 1971, *available at*

https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1088.pdf.

[11] Memorandum from G.H. Crawford to L.C. Krogh et al. re: Fluorocarbons in Human Blood Plasma, Aug. 20, 1975, *available at*

https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1118.pdf.

[12] 3M Chronology – Fluorochemicals in Blood, Aug. 26, 1977, *available at*

https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1144.pdf.

**CLASS ACTION COMPLAINT** - 64

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

210.   By the mid-1970s, 3M and Ansul (and possibly other Defendants) had an intimate understanding of the persistent nature of PFCs. A 1976 study, for example, observed no biodegradation of FC-95, the potassium salt of PFOS; a result 3M characterized as "unsurprising" in light of the fact that "[b]iodegradation of FC 95 is improbable because it is completely fluorinated."[13]

211.   In 1977, Ansul, the AFFF manufacturer later acquired by Defendant Tyco, authored a report titled "Environmentally Improved AFFF," which acknowledged that releasing AFFF into the environment could pose potential negative impacts to groundwater quality.[14] Ansul wrote: "The purpose of this work is to explore the development of experimental AFFF formulations that would exhibit reduced impact on the environment while retaining certain fire suppression characteristic . . . improvements [to AFFF formulations] are desired in the environmental area, i.e., development of compositions that have a reduced impact on the environment without loss of fire suppression effectiveness." Thus, Ansul knew by the mid-1970s that the

---

[13] Technical Report Summary, August 12, 1976 [3MA01252037].

[14] Ansul Co., Final Report: Environmentally Improved AFFF, N00173-76-C-0295, Marinette, WI, Dec. 13, 1977, *available at* https://apps.dtic.mil/dtic/tr/fulltext/u2/a050508.pdf.

**CLASS ACTION COMPLAINT** - 65

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

environmental impact of AFFF needed to be reduced, yet there is no evidence that Ansul (or any other Defendant) ever pursued initiatives to do so.

212. A 1978 3M biodegradation study likewise reported that an "extensive study strongly suggest[ed]" one of its PFAS was "likely to persist in the environment for extended period unaltered by metabolic attack."[15] A year later, a 3M study reported that one of its fluorosurfactants "was found to be completely resistant to biological test conditions," and that it appeared waterways were the fluorosurfactant's "environmental sink."[16]

213. At the same time, several studies sponsored by 3M showed that the fluorosurfactants used in AFFF were even more toxic than previously believed. A study of subacute toxicity in rhesus monkeys, in which the monkeys were to be given doses of PFOS over ninety days, had to be redesigned and repeated "[b]ecause of unexpected

---

[15] Technical Report Summary re : Fate of Fluorochemicals in the Environment, Biodegradation Studies of Fluorocarbons - II, Jan. 1, 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1153.pdf.

[16] Technical Report Summary re : Fate of Fluorochemicals in the Environment, Biodegradation Studies of Fluorocarbons - III, July 19, 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1179.pdf.

**CLASS ACTION COMPLAINT** - 66

early mortalities in all monkeys at all levels."[17] None of the monkeys survived past twenty days. As a summary of the study stated, PFOS "proved to be considerably more toxic to monkeys than anticipated[.]" In addition, PFOA reduced the survival rate of fathead minnow fish eggs,[18] and PFOS and PFOA were shown to be toxic to rats.[19] As

---

[17] Ninety-Day Subacute Rhesus Monkey Toxicity Study, Dec. 18, 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1191.pdf; Aborted FC95 Monkey Study, Jan. 2, 1979, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1193.pdf; FC-95, FC-143 and FM-3422 – 90 Day Subacute Toxicity Studies Conducted at IRDC – Review of Final Reports and Summary, *available at* https://static.ewg.org/reports/2019/pfa-timeline/1977_Most%20Toxic.pdf?_ga=2.34744996.426747500.1673645134-2012946541.1673645134.

[18] The Effects of Continuous Aqueous Exposure to 78.03 on Hatchability of Eggs and Growth and Survival of Fry of Fathead Minnow, June 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1176.pdf.

[19] Acute Oral Toxicity (LD$_{50}$) Study in Rats (FC-143), May 5, 1978, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1170.pdf; FC-95, FC-143 and FM-3422 – 90 Day Subacute Toxicity Studies Conducted at IRDC – Review

---

**CLASS ACTION COMPLAINT** - 67

the summary documented observed, "[b]ecause of the apparent persistence of these fluorochemicals in the body, *the most important question remains possible long term effects*."[20]

214.    In 1979, 3M also completed a comprehensive biodegradation and toxicity study covering investigations between 1975 and 1978.[21] More than a decade after 3M began selling AFFF containing fluorosurfactants it wrote, "there has been a general lack of knowledge relative to the environmental impact of these chemicals." The report

_____

of Final Reports and Summary, Mar. 20, 1979, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1199.pdf.

[20] *Id.* (FC-95, FC-143 and FM-3422 – 90 Day Subacute Toxicity Studies Conducted at IRDC – Review of Final Reports and Summary, Mar. 20, 1979, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1199.pdf.)

[21] Technical Report Summary, Final Comprehensive Report on FM 3422, Feb. 2, 1979, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX2563.pdf.

**CLASS ACTION COMPLAINT** - 68

ominously asked, "If these materials are not biodegradable, what is their fate in the environment?"[22]

215.    In 1979, 3M and DuPont discussed 3M's discovery of high levels of PFOS in the blood of its workers. Both companies came to the same conclusion that there: was "no reason" to notify the EPA of the finding.[23] 3M told the EPA in 1980 only that it had discovered PFOS in the blood of "some of our plant employees."

216.    By at least the end of the 1980s, additional research and testing performed by Defendants, including at least 3M and DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

---

[22] 3M Internal Correspondence from R. Howell to C. Olsen re: Fluorochemicals in the Environment with attachments, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1372.pdf.

[23] Memorandum from R.A. Prokop to J.D. Lazerte re: Disclosure of Information on Levels of Fluorochemicals in Blood, July 26, 1979, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX2723.pdf.

**CLASS ACTION COMPLAINT** - 69

217.   In 1981, DuPont tested for and found PFOA in the blood of female plant workers at its Washington Works plant in Parkersburg, West Virginia, where it had been using 3M's PFOA to manufacture Teflon since 1951. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[24]

218.   In 1983, 3M researchers concluded that concerns about PFAS "give rise to concern for environmental safety," including "legitimate questions about the persistence, accumulation potential, and ecotoxicity of fluorochemicals in the environment."[25] That same year, 3M completed a study finding that PFOS caused the growth of cancerous tumors in rats.[26] This finding was later shared with DuPont and

---

[24] C-8 Blood Sampling Results, *available at* http://tiny.cc/v8z1mz.

[25] 3M Environmental Laboratory (EE & PC), Fate of Fluorochemicals - Phase II, May 20, 1983, *available at*

https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1284.pdf.

[26] Two Year Oral (Diet) Toxicity/Carcinogenicity Study of Fluorochemical FC-143 in Rats, Volume 1 of 4, Aug. 29, 1987, *available at*

https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1337.pdf.

**CLASS ACTION COMPLAINT** - 70

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

led them to consider whether "they may be obliged under their policy to call FC-143 a carcinogen in animals."[27]

219.   In 1984, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers, leading one of the company's medical officers to warn in an internal memo: "we must view this present trend with serious concern. It is certainly possible that . . . exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[28]

220.   The same year, DuPont tested drinking water near its Washington Works plant and found elevated PFOA levels in the water, but, after deciding that limiting PFOA discharge from the plant would not be "economically attractive," it did nothing to reduce contamination from the plant.

---

[27] Memorandum from R.G. Perkins to F.D. Griffith re: Summary of the Review of the FC-143 Two-Year Feeder Study Report to be presented at the January 7, 1988 meeting with DuPont, January 5, 1988, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1343.pdf.

[28] Memorandum from D.E. Roach to P.F. Riehle re: Organic Fluorine Levels, Aug. 31, 1984, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1313.pdf.

**CLASS ACTION COMPLAINT** - 71

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

### iv.    1990s-2000s: With 3M and DuPont Under Scrutiny, the AFFF Market Shifts to Telomerization

221.    Federal law requires chemical manufacturers and distributors to immediately notify the EPA if they have information that "reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment." Toxic Substances Control Act ("TSCA") § 8(e), 15 U.S.C. § 2607(e).

222.    Despite its decades of research, 3M waited until May 1998 to submit a report to the EPA under TSCA Section 8(e). Even in that submission, however, 3M downplayed what it knew, according to a former employee:

Just before that submission we found PFOS in the blood of eaglets—eaglets still young enough that their only food consisted of fish caught in remote lakes by their parents. This finding indicates a widespread environmental contamination and food chain transfer and probable bioaccumulation and bio-magnification. This is a very significant finding that the 8(e) reporting rule was created to collect. 3M chose to report simply that PFOS had been found in the blood of animals, which is true but omits the most significant information.[29]

223.    Although 3M acknowledged, in 1998, the presence of PFOS in the blood of the general population, it insisted that it did not "believe that any reasonable basis exists to conclude that PFOS 'presents a substantial risk of injury to health or the

---

[29] Letter from R. Purdy, Mar. 28, 1999, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1001.pdf.

**CLASS ACTION COMPLAINT** - 72

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

environment.'" Internally, the message was quite different: 3M's Manager of Corporate Toxicology advised the company to replace "PFOS-based chemistry as these compounds [are] ***VERY persistent and thus insidiously toxic***."

224. In 2000, 3M, after half a century of manufacturing fluorinated chemicals through ECF, announced that it would phase out its production of several long-chain PFAS compounds, including PFOA, although it continued to manufacture other PFAS chemicals.

225. In April 2006, 3M agreed to pay EPA a penalty of more than $1.5 million after being cited for 244 violations of the TSCA, which included violations for failing to disclose studies regarding PFOS, PFOA, and other fluorinated compounds, dating back decades.

226. Likewise, in December 2005, the EPA announced it was imposing the "Largest Environmental Administrative Penalty in Agency History" against DuPont based on evidence that it violated the TSCA by concealing the environmental and health effects of PFOA.

227. On information and belief, Defendants knew or should have known that AFFF containing PFOA or PFOS would very likely injure and/or threaten public health and the environment, even when used as intended or directed.

**CLASS ACTION COMPLAINT** - 73

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

228.   Defendants failed to warn of these risks to the environment and public health, including the impact of their AFFF/Component Products on the quality of unprotected water sources.

229.   Defendants were all sophisticated and knowledgeable in the art and science of designing, formulating, and manufacturing AFFF/Component Products. They understood far more about the properties of their AFFF/Component Products— including the potential hazards they posed to human health and the environment—than any of their customers. Still, Defendants declined to use their sophistication and knowledge to design safer products.

**D.    The Impact of PFOS and PFOA on the Environment and Human Health Is Finally Revealed**

230.   As discussed above, neither 3M, DuPont, nor, on information and belief, any other Defendant complied with their obligations to notify EPA about the "substantial risk of injury to health or the environment" posed by their AFFF/Component Products. *See* TSCA § 8(e).

231.   Despite decades of research, 3M first shared its concerns with EPA in the late 1990s. In a May 1998 report submitted to EPA, "3M chose to report simply that

**CLASS ACTION COMPLAINT** - 74

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

PFOS had been found in the blood of animals, which is true but omits the most significant information," according to a former 3M employee.[30]

232.    On information and belief, 3M began in 2000 to phase out its production of products that contained PFOS and PFOA in response to pressure from the EPA.

233.    Once the truth about PFOS and PFOA was revealed, researchers began to study the environmental and health effects associated with them, including a "C8 Science Panel" formed out of a class action settlement arising from contamination from DuPont's Washington Works located in Wood County, West Virginia.

234.    The C8 panel consisted of three epidemiologists specifically tasked with determining whether there was a probable link between PFOA exposure and human diseases. In 2012, the panel found probable links between PFOA and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy-induced hypertension (including preeclampsia), and hypercholesterolemia.

235.    Human health effects associated with PFOS exposure include immune system effects, changes in liver enzymes and thyroid hormones, low birth weight, high uric acid, and high cholesterol. In laboratory testing on animals, PFOA and PFOS have

---

[30] *Id.* Letter from R. Purdy, Mar. 28, 1999, *available at* https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1001.pdf.

**CLASS ACTION COMPLAINT** - 75

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

caused the growth of tumors, changed hormone levels, and affected the function of the liver, thyroid, pancreas, and immune system.

236.    The injuries caused by PFAS can arise months or years after exposure.

237.    Even after the C8 Science Panel publicly announced that human exposure to 50 parts per trillion, or more, of PFOA in drinking water for one year or longer had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFOA in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind.

238.    Furthermore, Defendants have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate to satisfy the standards of Defendants to prove such adverse effects upon and/or any risk to humans with respect to PFOA in human blood.

239.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood

**CLASS ACTION COMPLAINT** - 76

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

and any alleged adverse impacts and/or risks associated therewith, effectively preventing the public from discovering the existence and extent of any injuries/harm as alleged herein.

**E.    The Fire Fighting Foam Coalition**

240.    Following 3M's phase-out of ECF production and its AFFF product, telomerization emerged as the dominant manufacturing process for fluorosurfactants. 3M had been the dominant manufacturer in the lucrative AFFF market, and multiple companies seized the opportunity created by 3M's withdrawal. But the market opportunity presented uncertainties, as it was unclear whether regulators would view the telomer-based AFFF as posing the same hazards as 3M's PFOS-containing AFFF. The key question for regulators was whether the telomer-based AFFF would degrade to PFOA once in the environment.

241.    Defendants Tyco, Chemguard, Kidde, National Foam, and Buckeye formed a group called the Fire Fighting Foam Coalition ("FFFC") to protect their business opportunity and advocate for the continued use of telomer-based AFFF. The FFFC declared that it would serve as "a single source for accurate, balanced information on environment related questions" and would "ensure that accurate information about PFOS alternatives, including telomer-based products, is

**CLASS ACTION COMPLAINT** - 77

disseminated in the marketplace."[31] The FFFC made several representations regarding the safety of telomer-based AFFF that were either misleading half-truths or were contrary to Defendants' internal knowledge. For example, the FFFC assured the public that "telomer based AFFF does not contain PFOS and cannot be oxidized or metabolized into PFOS."[32] This statement was true, but only because PFOS was exclusively manufactured by 3M, and it did not mean that telomer-based AFFF was any safer.

242.    The FFFC also told the EPA in 2001 that telomer-based AFFF "does not contain any PFOA-based product."[33] The issue, however, was whether telomer-based AFFF could degrade into PFOA. One company executive admitted in an internal memo

---

[31] Fact Sheet on AFFF Fire Fighting Agents, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2002-03-FFFC.pdf?_ga=2.136386352.1253861871.1649070681-2123137255.1639662520.

[32] *Id.* Fact Sheet on AFFF Fire Fighting Agents, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2002-03-FFFC.pdf?_ga=2.136386352.1253861871.1649070681-2123137255.1639662520.

[33] *Id.* Fact Sheet on AFFF Fire Fighting Agents, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2002-03-FFFC.pdf?_ga=2.136386352.1253861871.1649070681-2123137255.1639662520.

**CLASS ACTION COMPLAINT** - 78

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

that his company's AFFF "will degrade in the environment" to produce PFOA and the "question is how toxic" and how "bioaccumulative" these degraded products are.[34] But contrary to this internal acknowledgment, the FFFC publicly asserted that "telomer based fire fighting foams are not likely to be a source of PFOA in the environment."[35]

243.    The EPA appointed a committee known as the Telomer Technical Workgroup to make recommendations to the agency. The president of the FFFC represented the telomer-based AFFF industry on the EPA committee. When, in 2003, the Telomer Technical Workgroup reported its conclusions and recommendations, the FFFC president was the spokesperson.

---

[34] *In Re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2:18-mn-02873-RMG:28, Email chain from John Dowling to Anne Regina re: EPA meeting: Comments (Apr. 18, 2001) attached as an exhibit to Plaintiffs' Omnibus Opposition to Defendants' Motion for Partial Summary Judgment on the Second and Third Prongs of the Government Contractor Immunity Defense, ECF 2409-112.

[35] PFOA ECA Plenary Meeting, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2003-Telomers_Safe_Email.pdf?_ga=2.128105996.1253861871.1649070681-2123137255.1639662520.

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

244.   In what the FFFC president called a "major victory" for the industry, the EPA accepted the proposal of its Workgroup that "telomer-based fire fighting foams no longer be considered as part of the PFOA ECA process."[36] The FFFC president remarked that "[w]hen we started this organization two years ago [in 2001], the fate of telomer based AFFF was being tied directly to the fate of PFOA and the EPA had just told the military to start searching for alternatives to AFFF."[37] The telomer-based AFFF Defendants had successfully forestalled government restrictions on their products, thereby prolonging the use of AFFF at the YTC and elsewhere.

245.   The fluorochemicals the Fluorosurfactant Defendants needed to manufacture those fluorosurfactants contained PFOS, PFOA, and/or their chemical

---

[36] *Id.* PFOA ECA Plenary Meeting, *available at*

https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2003-Telomers_Safe_Email.pdf?_ga=2.128105996.1253861871.1649070681-2123137255.1639662520.

[37] *Id.* PFOA ECA Plenary Meeting, *available at*

https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2003-Telomers_Safe_Email.pdf?_ga=2.128105996.1253861871.1649070681-2123137255.1639662520.

**CLASS ACTION COMPLAINT** - 80

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

precursors and were designed, manufactured, marketed, distributed and/or sold by the Fluorochemical Defendants.

246.   On information and belief, the Fluorochemical and Fluorosurfactant Defendants were aware that the fluorochemicals and fluorosurfactants they designed, manufactured, marketed, distributed, and/or sold would be used in the AFFF products designed, manufactured, marketed, distributed, and/or sold by the AFFF Defendants.

247.   On information and belief, the PFC and Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and/or sold the fluorochemicals and/or fluorosurfactants contained in the AFFF products discharged into the environment during fire protection, training, and response activities conducted at the YTC, resulting in widespread PFAS contamination.

**F.    Federal, State, and International Government Agencies Call for Monitoring and Cleanup of PFAS Contamination**

248.   On May 2, 2012, the EPA published its Third Unregulated Contaminant Monitoring Rule ("UCMR3"), requiring public water systems nationwide to monitor for thirty contaminants of concern between 2013 and 2015, including PFOS and PFOA.[38]

---

[38] *Revisions to the Unregulated Contaminant Monitoring Regulation (UCMR 3) for Public Water Systems*, 77 Fed. Reg: 26072 (May 2, 2012).

**CLASS ACTION COMPLAINT** - 81

249.    In the May 2015 "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFAS's)," scientists and other professionals from a variety of disciplines, concerned about the production and release into the environment of PFOA, called for greater regulation, restrictions, limits on the manufacture and handling of any PFOA containing product, and to develop safe non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.[39]

250.    On May 25, 2016, the EPA released a lifetime health advisory level (HAL) for drinking water and health effects support documents for PFOS and PFOA.[40] The EPA developed the HAL to assist governmental officials in protecting public health when PFOS and PFOA are present in drinking water. The EPA HAL identified the concentration of PFOS and PFOA in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure at 0.07 ppb or 70

---

[39] Blum A, Balan SA, Scheringer M, Trier X, Goldenman G, Cousins IT, Diamond M, Fletcher T, Higgins C, Lindeman AE, Peaslee G, de Voogt P, Wang Z, Weber R. 2015. The Madrid statement on poly- and perfluoroalkyl substances (PFASs). Environ Health Perspect 123:A107–A111; http://dx.doi.org/10.1289/ehp.1509934.

[40] See Fed. Register, Vol. 81, No. 101, May 25, 2016, Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate.

**CLASS ACTION COMPLAINT** - 82

ppt. The HAL was based on peer-reviewed studies of the effects of PFOS and PFOA on laboratory animals (rats and mice) and was also informed by epidemiological studies of human populations exposed to PFOS. These studies indicated that exposure to PFOS and PFOA over the HAL could result in adverse health effects, including:

    a.   Developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations);

    b.   Cancer (testicular and kidney);

    c.   Liver effects (tissue damage);

    d.   Immune effects (e.g., antibody production and immunity);

    e.   Thyroid disease and other effects (e.g., cholesterol changes).

251. In 2016, the National Toxicology Program of the United States Department of Health and Human Services ("NTP") and the International Agency for Research on Cancer ("IARC") both released extensive analyses of the expanding body of research regarding the adverse effects of fluorochemicals. The NTP concluded that both PFOA and PFOS are "presumed to be an immune hazard to humans" based on a "consistent pattern of findings" of adverse immune effects in human (epidemiology)

**CLASS ACTION COMPLAINT** - 83

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

studies and "high confidence" that PFOA and PFOS exposure was associated with suppression of immune responses in animal (toxicology) studies.[41]

252.    IARC similarly concluded that there is "evidence" of "the carcinogenicity of . . . PFOA" in humans and in experimental animals, meaning that "[a] positive association has been observed between exposure to the agent and cancer for which a causal interpretation is . . . credible."[42]

253.    California has listed PFOA and PFOS to its Proposition 65 list as a chemical known to cause reproductive toxicity under the Safe Drinking Water and Toxic Enforcement Act of 1986.[43]

---

[41] *See* U.S. Dep't of Health and Human Services, Nat'l Toxicology Program, *NTP Monograph: Immunotoxicity Associated with Exposure to Perfluorooctanoic Acid or Perfluorooctane Sulfonate* (Sept. 2016), at 1, 17, 19, *available at* https://ntp.niehs.nih.gov/ntp/ohat/pfoa_pfos/pfoa_pfosmonograph_508.pdf

[42] *See* Int'l Agency for Research on Cancer, IARC Monographs: *Some Chemicals Used as Solvents and in Polymer Manufacture* (Dec. 2016), at 27, 97, *available at* http://monographs.iarc.fr/ENG/Monographs/vol110/mono110.pdf.

[43] California Office of Environmental Health Hazard Assessment, *Chemicals Listed Effective Nov. 10, 2017 as Known to the State of California to Cause*

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

254.    The United States Senate and House of Representatives passed the National Defense Authorization Act in November 2017, which included $42 million to remediate fluorochemical contamination from military bases, as well as devoting $7 million toward the Investing in Testing Act, which authorizes the Center for Disease Control and Prevention ("CDC") to conduct a study into the long-term health effects of PFOA and PFOS exposure.[44] The legislation also required that the Department of Defense submit a report on the status of developing a new military specification for AFFF that did not contain PFOS or PFOA.[45]

---

*Reproductive Toxicity: Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)*, Nov. 9, 2017, *available at* https://oehha.ca.gov/proposition-65/crnr/chemicals-listed-effective-november-10-2017-known-state-california-cause.

[44] National Defense Authorization Act for Fiscal Year 2018, H.R. 2810, 115th Congress (2017), *available at* https://www.congress.gov/115/plaws/publ91/PLAW-115publ91.pdf.

[45] *Id.*; *see also* U.S. Department of Defense, *Alternatives to Aqueous Film Forming Foam Report to Congress*, June 2018, *available at* https://www.denix.osd.mil/derp/home/documents/alternatives-to-aqueous-film-forming-foam-report-to-congress/.

**CLASS ACTION COMPLAINT** - 85

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

255.  In June 2018, the Agency for Toxic Substances and Disease Registry ("ATSDR") and EPA released a draft toxicological profile for PFOS and PFOA and recommended the drinking water advisory levels be lowered to 11 ppt for PFOA and 7 ppt for PFOS.[46]

256.  In December 2019, the United States Senate and House of Representatives passed the National Defense Authorization Act for Fiscal Year 2020 ("FY 2020 NDAA"), which introduced new prohibitions on the use of PFAS-containing AFFF for land-based applications.[47] Section 322 of the Act introduced a timeline for the phasing out of AFFF use by the military, including by requiring the Secretary of the Navy to publish a new military specification for a fluorine-free fire-fighting agent for use at all military installations by January 31, 2023. Section 322(b) and (c) then provide that Department of Defense organizations will no longer be authorized to purchase AFFF containing more than 1 part per billion of PFAS after

---

[46] ATSDR, *Toxicological Profile for Perfluoroalkyls: Draft for Public Comment* (June 2018), *available at* https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf.

[47] National Defense Authorization Act for Fiscal Year 2020, S. 1790, 116th Congress (2019), *available at* https://www.govinfo.gov/content/pkg/BILLS-116s1790enr/pdf/BILLS-116s1790enr.pdf.

**CLASS ACTION COMPLAINT** - 86

October 1, 2023, and that after October 1, 2024, this prohibition will extend to the use of any PFAS-containing AFFF at any military installation.

257.    On February 20, 2020, the EPA announced a proposed decision to regulate PFOA and PFOS under the Safe Drinking Water Act, which the agency characterized as a "key milestone" in its efforts to "help communities address per- and polyfluoroalkyl substances (PFAS) nationwide."[48]

258.    On June 15, 2022, the EPA released new drinking water health advisory levels (HALs) for four PFAS, including new interim HALs for PFOS and PFOA that departed significantly from the 2016 EPA HAL they replaced.[49] Specifically, EPA issued HALs of 0.004 ppt for PFOA and 0.02 ppt for PFOS,[50] which collectively accounted for only a small fraction of the combined 70 ppt HAL that preceded them.

---

[48] Press Release, *EPA Announces Proposed Decision to Regulate PFOA and PFOS in Drinking Water*, Feb. 20, 2020, *available at* https://www.epa.gov/newsreleases/epa-announces-proposed-decision-regulate-pfoa-and-pfos-drinking-water.

[49] *See* Fed. Register, Vol. 87, No. 36848, June 21, 2022, Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances.

[50] *Id.* Fed. Register, Vol. 87, No. 36848, June 21, 2022, Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances.

**CLASS ACTION COMPLAINT** - 87

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

Importantly, EPA set these interim HALs at levels below which PFOS and PFOA can be measured using current analytic methods, meaning that the mere detection of PFOS or PFOA in a water provider's system would be sufficient on its own to exceed the new levels.

259.    As support for its decision, EPA explained that the science had evolved since 2016 and that the new interim HALs for PFOS and PFOA were "based on human studies" that "found associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, human development (e.g., decreased birth weight), and cancer."[51] Specifically, EPA had performed updated health effects analyses for PFOS and PFOA to provide support for the drinking water regulations the agency planned to adopt for the two chemicals under the SDWA. Based on these analyses, EPA concluded that "the levels at which negative health effects could occur are much lower than previously understood when EPA issued the 2016 health

---

[51] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Communities* at 1-2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-communities.pdf..

**CLASS ACTION COMPLAINT** - 88

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

advisories for PFOA and PFOS – including near zero for certain health effects."[52] For this reason, the agency determined there was a "pressing need to provide updated information on the current best available science to public health officials prior to finalization of the health effects assessment."[53]

260.    Because the referenced health analyses are still undergoing final review by EPA's Science Advisory Board, the agency has stated that the new interim HALs for PFOS and PFOA are subject to change. EPA has indicated, however, that it does

---

[52] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Public Water Systems* at 2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-water-system.pdf.

[53] EPA Office of Water, EPA Doc. No. 822-R-22-003, *INTERIM Drinking Water Health Advisory: Perfluorooctanoic Acid (PFOA) CASRN 335-67-1* at 18 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/interim-pfoa-2022.pdf; EPA Office of Water, EPA Doc. No. 822-R-22-004, *INTERIM Drinking Water Health Advisory: CASRN 1763-23-1* at 18 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/interim-pfos-2022.pdf.

---

**CLASS ACTION COMPLAINT** - 89

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

not anticipate any changes resulting in revised HALs for PFOS and PFOA that are greater than the 4 ppt minimum reporting level[54] that applies to Public Water Systems.[55]

261.  On September 6, 2022, EPA published a notice of proposed rulemaking seeking public comment on its plan to designate PFOS and PFOA as hazardous substances under CERCLA.[56] Pursuant to that notice, all comments from the public must be submitted by November 7, 2022.

---

[54] As EPA's website explains, the Minimum Reporting Level ("MRL") for Unregulated Contaminant Monitoring Rule (UCMR) 5 is the minimum quantitation level that, with 95 percent confidence, can be achieved by capable analysts at 75 percent or more of the laboratories using a specified analytical method. The MRLs in EPA's chart are based on the UCMR 5 requirement to use EPA Method 533.

[55] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Public Water Systems* at 2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-water-system.pdf.

[56] *See* Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 87 Fed. Reg. 54415 (Sep. 6, 2022).

**CLASS ACTION COMPLAINT** - 90

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

262.    On January 6, 2023, the Defense Logistics Agency within the Department of Defense published a new Military Specification for "Fire Extinguishing Agent, Fluorine-Free Foam (F3) Liquid Concentrate, for Land-Based, Fresh Water Application," MIL-PRF-32725 ("F3 MilSpec") in accordance with § 332(a)(1) of the FY 2020 NDAA.[57] This new specification will govern fire extinguishing foams used by all Department of Defense organizations and will require such foams to test "non-detect" for PFAS. The specification further requires manufacturers to "certify in writing that PFAS has not intentionally been added to the concentrate."

**G.    Use of AFFF at the Yakima Training Center**

263.    The YTC is a sub-installation of Joint Base Lewis-McChord ("JBLM"). It is located about 100 air miles east of JBLM and about 10 miles north of Yakima. YTC covers 327,231 acres in Yakima and Kittitas Counties.

264.    The YTC is an active fire suppressant training, testing, research, and development facility located at Washington State.

265.    For decades, YTC used its buildings and surroundings areas for firefighting activities. This type of training regularly included the use of AFFF as an extinguishing agent for Class B fires.

---

[57] Available on the Defense Logistics Agency's website, https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=285047.

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

266.   On information and belief, Plaintiffs and Class Members' contamination is a direct and proximate result of mandatory fire protection, firefighting exercises, fire training operations, and response activities at the YTC that used AFFF, resulting in the migration of PFAS into Plaintiff's water supplies.

**H.     AFFF Containing PFOS and PFOA Is Fungible and Commingled in the Groundwater**

267.   AFFF containing PFOS and/or PFOA, once it has been released to the environment, lacks characteristics that would enable identification of the company that manufactured that particular batch of AFFF or chemical feedstock.

268.   A subsurface plume, even if it comes from a single location, such as a retention pond or fire training area, originates from mixed batches of AFFF and chemical feedstock coming from different manufacturers.

269.   Because precise identification of the specific manufacturer of any given AFFF/Component Product that was a source of the PFAS found at the YTC is nearly impossible, given certain exceptions, Plaintiff must pursue all Defendants, jointly and severally.

270.   Defendants are also jointly and severally liable because they conspired to conceal the true toxic nature of PFOS and PFOA, to profit from the use of AFFF/Component Products containing PFOS and PFOA, at Plaintiff's expense, and to attempt to avoid liability.

**CLASS ACTION COMPLAINT** - 92

# VI.    CLASS ACTION ALLEGATIONS

271.    Plaintiffs bring this action as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed subclasses and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure, subject to amendment and additional discovery as follows:

      a. **<u>Medical Monitoring Class</u>**: Individuals who consumed water from their private wells in Yakima, Washington. ("Medical Monitoring Class").

      b. **<u>Property Damage Class</u>**: Individuals who own real property in Yakima, Washington. This class can be readily ascertained by Census data, property records, and county records.

272.    The Class has more than 100 members, as required under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

273.    Plaintiffs are members of the proposed Class they seek to represent. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23.

274.    Excluded from the Class are:

      a. Defendants, including any entity or division in which Defendants have a controlling interest, along with their legal representative, employees,

**CLASS ACTION COMPLAINT** - 93

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

officers, directors, assigns, heirs, successors, and wholly or partly owned subsidiaries or affiliates;

b. the Judge to whom this case is assigned, the Judge's staff, and the Judge's immediate family;

c. any class counsel or their immediate family members; and

d. all governmental entities.

275.   Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

A.   **Numerosity and Ascertainability**

276.   This action meets the numerosity requirement of Fed. R. Civ. P. 23(a)(1), given that the number of impacted individuals, upon information and belief, is in the hundreds, making individual joinder of Class Members' respective claims impracticable. While the exact number of Class Members is not yet known, a precise number can be ascertained from Census data, property records, and county records and through other appropriate discovery.

277.   The resolution of the claims of the Class Members in a single action will provide substantial benefits to all parties and the Court. It is expected that the Class Members will number in the hundreds.

**CLASS ACTION COMPLAINT** - 94

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

278.    Finally, Class Members can be notified of the pendency of this action by Court-approved notice methods.

**B.    Typicality**

279.    Pursuant to Federal Rules of Civil Procedure 23(a)(3), Plaintiffs' claims are typical of the claims of class members and arise from the same course of conduct by Defendants. Plaintiffs' persons and real property, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred damages and losses related to the introduction of PFOA, PFOS, and other PFC's into the water supplies in Yakima Washington, causing personal injuries and property damages.

280.    Furthermore, the facts and circumstances surrounding Defendants' actions and misconduct are common to all Class Members and represent a common thread of misconduct resulting in common injury to all Class Members. The relief Plaintiffs seek is typical of the relief sought for absent Class Members.

281.    While the degree of exposure may differ across Class Members, factual inconsistences between the class members are not enough to defeat typicality. Since the named Plaintiffs assert reflective of those of Class Members, the factor of typicality is satisfied.

**CLASS ACTION COMPLAINT** - 95

**C.     Adequacy of Representation**

282.   Plaintiffs will serve as fair and adequate class representative because their interests, as well as the interests of their counsel, do not conflict with the interests of other members of the class they seek to represent.

283.   Plaintiffs have retained counsel competent and well experienced in class action and environmental tort litigation.

284.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to the Class.

**D.     Predominance of Common Issues**

285.   There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, making it appropriate to bring this action under Rule 23(b)(3). The answers to these common questions will advance resolution of the litigation as to all Class Members. Common legal and factual issues include:

286.   Plaintiffs' claims arise from the same course of conduct giving rise to the claims of the Class Members, meaning the entire matter of Defendants' liability in this case can be adjudicated on a class basis to avoid a waste of judicial resources and inconsistent judgements.

**CLASS ACTION COMPLAINT** - 96

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

287. The answers to these common questions will advance resolution of the litigation as to all Class Members. Common legal and factual issues include:

a. Whether Defendants engaged in the conduct alleged herein;

b. Whether Defendants knew or should have known that exposure to PFOS, PFOA, and/or their chemical precursors could increase health risks;

c. Whether Defendants knew or should have known that their manufacture of AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors was unreasonably dangerous;

d. Whether Defendants knew or should have known that their AFFF/Component Products contained persistent, stable, and mobile chemicals that were likely cause contamination;

e. Whether Defendants failed to sufficiently warn users of the potential for harm that resulted from use of their AFFF/Component Products;

f. Whether Defendants became aware of health and environmental harm caused by their AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors, and failed to warn users, Plaintiffs, and the Class Members;

g. The extent to which Defendants knew about PFAS contamination in Yakima, Washington;

CLASS ACTION COMPLAINT - 97

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

h.  Whether the Defendants owed Plaintiffs and the Class Members a duty to refrain from the actions that caused the PFAS contamination in Yakima, Washington;

i.  Whether Defendants made unlawful and misleading representations or material omissions with respect to the health impacts of PFAS;

j.  For the Medical Monitoring Class, whether Plaintiffs and Class Members were exposed to water containing elevated levels of PFOA and PFOS while living in Yakima, Washington;

k.  For the Property Damage Class, whether the PFOA and PFOS contamination caused and continues to cause:

(1) continuous invasion of the property rights of the Plaintiffs and Class such that the property values within the Areas of Investigation have and/or continue to decline in value following the disclosure of the PFOA contamination; and

(2) Have substantially interfered with Plaintiffs' and the Class' use and enjoyment of their property

l.  Whether Plaintiffs and the Class Members are entitled to damages and other monetary relief and other equitable relief, including but not limited to punitive damages, and if so, in what amount;

**CLASS ACTION COMPLAINT** - 98

m. Whether Plaintiffs and the Class Members have sustained damages and the proper measure of damages;

n. Whether Defendants are strictly liable to Plaintiffs and the Class Members for their actions; and

o. Whether Defendants were unjustly enriched by their actions at the expense of Plaintiffs and the Class Members.

288.   While damages may vary amongst Class Members, individualized damages inquiries do not obviate the utility of the class mechanism for this action, given the predominant common issues of injury, causation, and liability.

**E.    Superiority**

289.   The class action mechanism is superior to any other available means of the fair and efficient adjudication of this case. Further, no unusual difficulties are likely to be encountered in the management of this class action. Given the great number of private well owners in Yakima, Washington who were impacted by Defendants' AFFF/Component Products, it is impracticable for Plaintiffs and the Class Members to individually litigate their respective claims, as doing so would risk inconsistent judgments and the potential for increased delays and expense for the parties and the court system. Therefore, the class action mechanism presents considerably less management challenges and provides the efficiency of a single adjudication overseen by a single court.

**CLASS ACTION COMPLAINT** - 99

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

## VII.  WASHINGTON PRODUCT LIABILITY ACT, MARKET SHARE LIABILITY, CONCERT OF ACTION, AND ENTERPRISE LIABILITY

290.   This Class Action Complaint is brought pursuant to the WPLA, which "is the exclusive remedy for product liability claims." *Marcias v. Saberhagen Holdings, Inc.,* 175 Wn. 2d 402, 282 P.3d 1069, 1073 (2012).

291.   Defendants in this action are manufacturers that control a substantial share of the market for AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors in the United States and are jointly responsible for the contamination of the groundwater at Yakima, Washington. Market share liability attaches to all Defendants and the liability of each should be assigned according to its percentage of the market for AFFF/Component Products at issue in this Complaint.

292.   Because PFAS is fungible, it is impossible to identify the exact Defendant who manufactured any given AFFF/Component Product containing PFOS, PFOA, and/or their chemical precursors found free in the air, soil or groundwater, and each of these Defendants participated in a territory-wide and U.S. national market for AFFF/Component Products during the relevant time.

293.   Concert of action liability attaches to all Defendants, each of which participated in a common plan to commit the torts alleged herein and each of which acted tortuously in pursuance of the common plan to knowingly manufacture and sell

**CLASS ACTION COMPLAINT** - 100

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

inherently dangerous AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors.

294.  Enterprise liability attaches to all the named Defendants for casting defective products into the stream of commerce.

## VIII.  CAUSES OF ACTION

### COUNT I:
### DEFECTIVE DESIGN

295.  Plaintiffs adopt, reallege, and incorporate the allegations above and further allege the following:

296.  As manufacturers of AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors, Defendants owed a duty to all persons whom its products might foreseeably harm, including Plaintiffs, and not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

297.  Defendants' AFFF/Component Products were unreasonably dangerous for its reasonably anticipated uses for the following reasons:

    a.  PFAS causes extensive groundwater contamination, even when used in its foreseeable and intended manner;

    b.  Even at extremely low levels, PFAS render drinking water unfit for consumption;

    c.  PFAS poses significant threats to public health; and

    d.  PFAS create real and potential environmental damage.

**CLASS ACTION COMPLAINT** - 101

298.   Defendants knew of these risks and failed to use reasonable care in the design of their AFFF/Component Products.

299.   AFFF containing PFOS, PFOA, and/or their chemical precursors poses a greater danger to the environment and to human health than would be expected by ordinary persons such as Plaintiffs and the general public.

300.   At all times, Defendants were capable of making AFFF/Component Products that did not contain PFOS, PFOA, and/or their chemical precursors. Thus, reasonable alternative designs existed which were capable of preventing Plaintiffs' injuries.

301.   The risks posed by AFFF containing PFOS, PFOA, and/or their chemical precursors far outweigh the products' utility as a flame-control product.

302.   The likelihood that Defendants' AFFF/Component Products would be spilled, discharged, disposed of, or released into the environment and entered Plaintiffs and Class Members' drinking water supply far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

303.   As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors, Plaintiffs have incurred and will incur medical

**CLASS ACTION COMPLAINT** - 102

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

monitoring costs and have suffered and will suffer personal injuries and property damages due to the PFAS contamination at their water wells.

304.   Defendants knew that it was substantially certain that their acts and omissions described above would result in the contamination of Plaintiffs and Class Members' water wells, and the personal injuries they sustain. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiffs' health and safety, and/or property rights.

## COUNT II:
## FAILURE TO WARN

305.   Plaintiffs adopt, reallege, and incorporate the allegations above, and further allege the following:

306.   As manufacturers of AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiffs and the public.

307.   Defendants' AFFF/Component Products were unreasonably dangerous for its reasonably anticipated uses for the following reasons:

   a. PFAS causes extensive groundwater contamination, even when used in its foreseeable and intended manner;

**CLASS ACTION COMPLAINT** - 103

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

b. Even at extremely low levels, PFAS render drinking water unfit for consumption;

c. PFAS poses significant threats to public health; and

d. PFAS create real and potential environmental damage.

308. Defendants knew of the health and environmental risks associated with their AFFF/Component Products, and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with their products or an instruction that would have avoided Plaintiffs' injuries.

309. Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of their AFFF/Component Products in the vicinity of drinking water supplies, including PFAS contamination of public drinking supplies and private wells, Defendants failed to issue any warnings, instructions, recalls, or advice regarding their AFFF/Component Products to Plaintiffs, governmental agencies or the public.

310. As a direct and proximate result of Defendants' failure to warn, Plaintiffs have incurred and will incur medical monitoring costs and have suffered and will suffer personal injuries and property damages in connection to the PFAS contamination at their water wells.

311. Defendants knew that it was substantially certain that their acts and omissions described above would result in the contamination of Plaintiffs' water wells.

**CLASS ACTION COMPLAINT** - 104

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiffs' health and safety, and/or property rights.

**COUNT III:**
**NEGLIGENCE**

312.   Plaintiffs adopt, reallege, and incorporate the allegations above, and further allege the following:

313.   As manufacturers of AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors, Defendants owed a duty to Plaintiff and to all persons whom its products might foreseeably harm and to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

314.   Defendants owed a duty to Plaintiff to act reasonably and not place inherently dangerous AFFF/Component Products into the marketplace when its release into the air, soil, and water was imminent and certain.

315.   Defendants knew or should have known that PFAS were leaching from AFFF used for fire protection, training, and response activities.

316.   Defendants knew or should have known that PFAS are highly soluble in water, highly mobile, extremely persistent in the environment, and high likely to contaminate water supplies if released into the environment.

**CLASS ACTION COMPLAINT** - 105

317.  Defendants knew or should have known that the manner in which they were designing, manufacturing, marketing, distributing, and selling their AFFF/Component Products would result in in the contamination of Plaintiffs water wells.

318.  Despite the fact that Defendants knew or should have known that PFAS are toxic, can contaminate water resources and are carcinogenic, Defendants negligently:

    a.  designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors;

    b.  issued deficient instructions on how their AFFF/Component Products should be used and disposed of, thereby permitting PFAS to contaminate the groundwater in and around Yakima County;

    c.  failed to recall and/or warn the users of their AFFF/Component Products of the dangers of groundwater contamination as a result of standard use and disposal of their products;

    d.  failed and refused to issue the appropriate warning and/or recalls to the users of their AFFF/Component Products; and

    e.  failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

**CLASS ACTION COMPLAINT** - 106

319.   The magnitude of the burden on the Defendants to guard against this foreseeable harm to Plaintiff was minimal, as the practical consequences of placing this burden on the Defendants amounted to a burden to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF/Component Products.

320.   As manufacturers, Defendants were in the best position to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF/Component Products, and to take steps to eliminate, correct, or remedy any contamination they caused.

321.   As a direct and proximate result of Defendants' negligence, Plaintiffs have incurred and will incur medical monitoring costs and have suffered and will suffer personal injuries and property damages due to the PFAS contamination at their water wells.

322.   Defendants acted without reasonable care. They knew or should have known that their acts and omissions described above would enter Plaintiffs' water wells and caused the personal injuries.

## COUNT IV:
## TRESPASS

323.   Plaintiff adopts, realleges, and incorporates the allegations above, and further allege the following:

**CLASS ACTION COMPLAINT** - 107

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

324.    Plaintiffs are the owners, operators, and actual possessors of real property and improvements used for collecting drinking water.

325.    Defendants designed, manufactured, distributed, marketed, and sold AFFF/Component Products with the actual knowledge and/or substantial certainty that AFFF containing PFOS, PFOA, and/or their chemical precursors would, through normal use, release PFAS that would migrate into groundwater, causing contamination on property other than on the property where it was used.

326.    Defendants intended or knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking.

327.    Plaintiffs have incurred and will incur incurred medical monitoring costs and have suffered and will suffer personal injuries and property damages due to the PFAS contamination at their water wells.

328.    Plaintiffs are seeking treble damages and actual litigation costs from Defendants as a result of their trespass. *See* RCW 4.24.630.

## COUNT V:
## PRIVATE NUISANCE

329.    Plaintiff adopts, realleges, and incorporates the allegations above, and further allege the following:

**CLASS ACTION COMPLAINT** - 108

330.   Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property. RCW 7.48.120.

331.   An action for nuisance for obstruction with the free enjoyment of property may be brought by any person whose enjoyment is lessened by the nuisance. RCW 7.48.010 -.020.

332.   At common law, an activity is a nuisance if it "interferes unreasonably with other person's use and enjoyment of their property." *Tiegs v. Watts*, 135 Wn.2d 1, 13, 954 P.2d 877 (1988) (*citing Jones v. Rumford*, 64 Wn.2d 559, 392 P.2d 808 (1964)).

333.   At all times relevant, Defendants were manufacturers of AFFF/Component Products that were used for decades and discharged or disposed of in a dangerous way that caused PFAS contamination of private wells in the areas surrounding YTC.

334.   Defendants manufactured AFFF/Component Products in a manner that created a nuisance and that unreasonably endangers or injures the Plaintiff, causing inconvenience and annoyance.

**CLASS ACTION COMPLAINT** - 109

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

335.   The improper use, handling, storage, release, discharge or dispose of Defendants' AFFF/Component Products has contaminated the environment, soil, property, natural resources, and drinking water supplies surrounding YTC, including Plaintiffs' and the Class's properties, unreasonably interfering with the Plaintiffs' and the Class's use of their properties, thus causing a private nuisance.

336.   The introduction of unknown quantities of PFAS into private wells unreasonably interfered with the use of natural resources and drinking water supplies in the areas surrounding YTC, such that it is offensive and has caused significant inconvenience or annoyance.

337.   The potential health hazards from the drinking water have caused Plaintiffs significant inconvenience and expense, interfering with the use of natural resources and drinking water supplies in the areas surrounding YTC.

338.   As a direct and proximate result of Defendants' acts and omissions creating the above-described nuisance, Plaintiffs have suffered and continue to suffer damages in responding to the PFAS contamination to the private water supplies in the areas surrounding YTC, including but not limited to the costs expended on alternative sources of drinking water for residents whose private wells have been contaminated, public water main extensions, investigative costs, engineering costs, sampling, monitoring and remediation costs, medical monitoring costs, and medical treatment costs.

**CLASS ACTION COMPLAINT** - 110

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

339.   Defendants intended or knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking.

## COUNT VI:
## ACTUAL FRAUDULENT TRANSFER (DuPont and Chemours Co.)

340.   Plaintiffs adopt, reallege, and incorporate the allegations above, and further allege the following:

341.   Through their effectuation of the Spinoff, Chemours Co. and DuPont (the "Fraudulent Transfer Defendants") caused Chemours Co. to transfer valuable assets to DuPont, including but not limited to the $3.9 billion dividend (the "Transfers"), while simultaneously assuming significant liabilities (the "Assumed Liabilities").

342.   The Transfers and Assumed Liabilities were made for the benefit of DuPont.

343.   At the time that the Transfers were made and the Liabilities were assumed, and until the Spinoff was complete, DuPont was in a position to, and in fact did, control and dominate Chemours Co.

344.   The Fraudulent Transfer Defendants made the Transfers and incurred the Assumed Liabilities with the actual intent to hinder, delay, and defraud the creditors or future creditors of Chemours Co.

**CLASS ACTION COMPLAINT** - 111

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

345.    Plaintiffs have been harmed and will be harmed as a result of the conduct of the Fraudulent Transfer Defendants.

346.    Plaintiffs are entitled to avoid the Transfers and to recover property or value transferred to DuPont.

**COUNT VII:**
**CONSTRUCTIVE FRAUDULENT TRANSFER (DuPont and Chemours Co.)**

347.    Plaintiffs adopt, reallege, and incorporate the allegations above, and further allege the following:

348.    Chemours Co. did not receive reasonably equivalent value from DuPont in exchange for the Transfers and Assumed Liabilities.

349.    Each of the Transfers and the assumption of the Assumed Liabilities by Chemours Co. was made to or for the benefit of DuPont.

350.    At the time that the Transfers were made and the Assumed Liabilities were assumed, and until the Spinoff was complete, DuPont was in a position to, and in fact did, control and dominate Chemours Co.

351.    The Fraudulent Transfer Defendants made the Transfers and assumed the Assumed Liabilities when Chemours Co. was engaged or about to be engaged in a business for which its remaining assets were unreasonably small in relation to its business.

**CLASS ACTION COMPLAINT** - 112

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

352.   Chemours Co. was insolvent or in contemplation of insolvency at the time of the Transfers, or became insolvent as a result of the Transfers and its assumption of the Assumed Liabilities.

353.   At the time that the Transfers were made and Chemours Co. assumed the Assumed Liabilities, the Fraudulent Transfer Defendants intended to incur, or believed or reasonably should have believed, that Chemours Co. would incur debts beyond its ability to pay as they became due.

354.   Plaintiff have been harmed and will be harmed as a result of the Transfers.

355.   Plaintiffs are entitled to avoid the Transfers and to recover property or value transferred to DuPont.

## COUNT VIII:
## MEDICAL MONITORING

356.   Plaintiffs adopt, reallege, and incorporate the allegations above, and further allege the following:

357.   Medical monitoring is available to Plaintiffs and the Class Members, some of whom have yet to sustain a present injury as a stand-alone cause of action, because the increased risk of developing the diseases and conditions discussed herein constitute an injury-in-fact.

358.   Plaintiffs and the Class Members seek consequential damages sufficient to fund a medical monitoring program that is reasonably tailored to the exposure risks

**CLASS ACTION COMPLAINT** - 113

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

of the contaminants released by Defendants' AFFF/Component Products, including but not limited to PFOS, PFOA, and/or their chemical precursors.

359.    Defendants knew or should have known that exposure to PFAS was hazardous to human health.

360.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling their AFFF/Component Products containing PFOS, PFOA, and/or their chemical precursors would result in Plaintiffs and the Class Members being exposed to increased levels of PFAS.

361.    Defendants continued negligent acts and omissions in manufacturing, marketing, and selling their AFFF/Component Products were the proximate cause of excessive exposure to PFAS on behalf of Plaintiffs and the Class Members.

362.    The resulting exposure significantly increased the risk of Plaintiffs and the Class Members contracting serious health conditions, including but not limited to kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), hypercholesterolemia, and autoimmune diseases such as sarcoidosis.

363.    Plaintiffs have also experienced fear and anxiety as a result of their increased risk of contracting the aforementioned conditions, including but not limited to kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy

**CLASS ACTION COMPLAINT** - 114

induced hypertension (including preeclampsia), hypercholesterolemia, and autoimmune diseases such as sarcoidosis.

364. The significantly increased health risks associated with exposure to PFOS, PFOA, and/or their chemical precursors make periodic diagnostic medical examinations reasonable and necessary.

365. Plaintiffs and the Class Members have incurred expenses and will incur future expenses for medical monitoring and, as a result, seek payment of their related medical expenses as an element of the damages they are entitled to from Defendants.

366. To compensate Plaintiffs and the Class Members for damages suffered due to Defendants' acts, they require, among other things, that Defendants collectively pay the past and future costs of obtaining necessary medical care, toxicological examinations and diagnoses, and any other medical monitoring necessary to ascertain and treat any current or future injuries suffered as a result of their exposure to PFAS, with Plaintiffs and the Class Members retaining the freedom to choose their medical providers. Many of these costs would not be covered by health care insurers, and if covered, may unfairly result in increased premiums.

367. The increased susceptibility to certain injuries and irreparable threat to future health and well-being Plaintiffs and the Class Members face as a result of their exposure to increased levels of PFAS can only be mitigated and/or addressed by the

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

creation of a medical monitoring program (the "Monitoring Program") that includes but is not limited to:

a. Establishing a program that provides education and outreach on the existence and availability of the services established under the Monitoring Program, including but not limited to the establishment of a public website with information about the Monitoring Program, meetings with potentially eligible members, development and dissemination of outreach materials informing Yakima residents about the program, and the establishment of phone information services;

b. Funding additional studies of the long-term effects of exposure to PFOS, PFOA, and/or their chemical precursors;

c. Funding medical surveillance for Yakima residents who receive or received their water from a private well;

d. Funding research into possible treatments for the detrimental effects of PFAS exposure suffered by Plaintiffs' and the Monitoring Class Members' as a result of the acts and omissions alleged here;

e. Gathering and forwarding to the treating physician of Plaintiffs and each Monitoring Class Member information related to the diagnosis and treatment of injuries resulting from their exposure to PFAS; and

**CLASS ACTION COMPLAINT** - 116

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

f.   Assisting in the early diagnosis and treatment of injuries resulting from exposure to PFAS through ongoing testing and monitoring of Plaintiffs and each Monitoring Class Member.

368.   Prescribed monitoring procedures exist that make the early detection of these diseases possible.

369.   These monitoring procedures or regimes are different from normally recommended procedures that would be used in the absence of the exposure.

370.   The prescribed medical surveillance is reasonably necessary according to contemporary scientific principles for persons such as Plaintiffs and the Monitoring Class Members who have been exposed and continue to be exposed to excessive levels of PFAS.

371.   Plaintiffs and the Monitoring Class Members will suffer irreparable harm if the Monitoring Program is not implemented because they are in danger of suffering serious health conditions as a result of their prolonged exposure to the contaminants described herein.

372.   Detection of these diseases and early treatment is medically reasonable and necessary to prevent additional injury and/or injury progression.

373.   It is also medically reasonable and necessary to collect data and coordinate study efforts for persons exposed to such substances in order to effectively treat Plaintiffs and the Monitoring Class Members.

**CLASS ACTION COMPLAINT** - 117

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

374.   Establishment of the Monitoring Program is an essential part of the consequential damages for Plaintiffs' and the Monitoring Class Members' exposure to PFAS because without said program, they will be subjected to additional injury and/or injury progression.

375.   Plaintiffs request that the Court appoint a plan administrator, require the Defendants to fund the medical monitoring plan, and reserve jurisdiction to enforce the terms and conditions of the Monitoring Program.

376.   Accordingly, Plaintiffs and the Medical Monitoring Class Members are entitled to a medical monitoring program that provides for medical testing, surveillance, monitoring, and study of Plaintiffs and the Medical Monitoring Class Members for conditions associated with exposure to the contaminants described herein, as well as payment of their attorney's fees and expenses, and any other relief this court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demands judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

   a.  Certification of the proposed Class;

   b.  an award to Plaintiffs and the Class Members of general, compensatory, exemplary, consequential, and nominal damages;

**CLASS ACTION COMPLAINT** - 118

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600

c.  equitable or injunctive relief, including, but not limited to, an order requiring that Defendants:

    i.  establish and implement a medical monitoring program for Plaintiffs and the Class Members; and

    ii.  an order requiring that Defendants fund a trust that will cover a prospective medical monitoring program.

d.  compensatory damages according to proof including, but not limited to:

    i.  costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination at Yakima County;

    ii.  costs and expenses related to past, present, and future treatment and remediation of PFAS contamination at Yakima County; and

    iii.  costs and expenses related to past, present, and future installation and maintenance of filtration systems to assess and evaluate PFAS at Yakima County; and

    iv.  costs and expenses related to funding and development of a medical monitoring program on behalf of Plaintiffs and the Class.

e.  an order barring the transfer of DuPont's liabilities for the claims brought in this Complaint;

**CLASS ACTION COMPLAINT** - 119

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600

f.  an award of punitive damages in an amount sufficient to deter Defendants' similar wrongful conduct in the future;

g.  an award of consequential damages;

h.  an order for an award of attorney fees and costs, as provided by law;

i.  an award of pre-judgment and post-judgment interest as provided by law; and

j.  an order for all such other relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all issues so triable as a matter of right.

Dated this 17th day of May, 2023.

Respectfully submitted,

**BRICKLIN & NEWMAN, LLP**

By: */s/ Dave Bricklin*
Dave Bricklin, WSBA No. 7583.
Zachary Griefen, WSBA No. 48608
123 NW 36th Street
Suite 205
Seattle, WA 98107
206.264.8600
bricklin@bnd-law.com
griefen@bnd-law.com

**NAPOLI SHKOLNIK**

By */s/ Patrick J. Lanciotti*
Patrick Lanciotti, Esq. *(PHV Pending)*
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
planciotti@napolilaw.com

**CLASS ACTION COMPLAINT** - 120